1

HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

CHEMOIL CORPORATION,

CASE NO. C13-5494 RBL

10

                 Plaintiff,

ORDER GRANTING MOTION TO
DISMISS COUNTERCLAIM

11

     v.

12

M/V DARYA VISHNU, its engines,
tackle and apparel,

[Dkt. #28]

13

              Defendant *IN REM*.

14

15

## I.       INTRODUCTION

16

THIS MATTER is before the Court on Plaintiff Chemoil Corporation's Motion to

17

Dismiss Defendant *in rem* M/V Darya Vishnu's counterclaim for wrongful arrest [Dkt. #28].

18

Chemoil supplied the Darya Vishnu with $582,556.65 worth of bunker fuel, which has not been

19

paid for.  When the balance became overdue, Chemoil obtained a warrant to arrest the vessel

20

while it was harbored in Longview, Washington.  Although no arrest was made because Vishnu

21

Shipping Limited ("Vishnu"), the vessel owner, posted a bond with the Court, Vishnu claims it

22

was wrongfully arrested because Chemoil did not have a maritime lien and a non-U.S. Marshall

23

was deputized to serve the arrest warrant.  Chemoil argues that the counterclaim should be

24

ORDER GRANTING MOTION TO DISMISS
COUNTERCLAIM - 1

1  dismissed because it fails to allege facts showing it acted in bad faith.   For the following

2  reasons, Chemoil's Motion to Dismiss the Counterclaim is **GRANTED**.

3  **II.      BACKGROUND**

4        In April 2013, STX Corporation sought to purchase fuel for the Darya Vishnu, a tanker it

5  was chartering.  On April 4, 2013, it sent an order to Chemoil Corporation's Korea office to

6  purchase bunker fuel that would be delivered to the Darya Vishnu in Panama.  The order

7  specified that the sellers' terms and conditions would not apply to the order.  The next day,

8  Chemoil emailed STX Corporation an Order Confirmation detailing the purchase.  It listed

9  Chemoil Corporation as the seller, STX Corporation as the buyer, and the Darya Vishnu as the

10  ship.  It also included Chemoil's Sales Terms and a link to Chemoil's General Terms and

11  Conditions.  The Terms and Conditions included a clause that the fuels delivered by Chemoil

12  were being "sold and delivered on the financial credit of the vessel being supplied" and the

13  promise of the buyer to pay.  [Dkt. #1, Ex. C].  It noted that Chemoil "shall have the right to

14  assert a maritime lien, attachment, or claim against the Vessel" should the buyer fail to pay.

15  [*Id.*].  The Terms and Conditions specified that the buyer should notify Chemoil if the creation of

16  a maritime lien on the vessel was prohibited through another contract, such as a charter

17  agreement, and that such a prohibition would require upfront payment for the fuel.  [*Id.*].

18  Chemoil required the buyer to give notice of a no-lien provision within 24 hours of receipt of the

19  Order of Confirmation.  [Dkt. #1, Ex. B].

20        On April 19, 2013, the Darya Vishnu arrived in Panama to refuel.  Vishnu alleges that,

21  prior to receiving the fuel, the master of the Darya Vishnu presented the bunker supplier with a

22  letter indicating that Chemoil Corporation did not have a maritime lien over the vessel because

23  Vishnu's charter agreement with STX Corporation prohibited any such liens.  Chemoil Latin

24

ORDER GRANTING MOTION TO DISMISS
COUNTERCLAIM - 2

1   America, Inc. (a separate legal entity from Chemoil Corporation) proceeded to supply the fuel to

2   the vessel, and the Darya Vishnu left port the next day.

3         On June 18, 2013, two months after the Darya Vishnu received the fuel and one month

4   after payment was due, counsel for Chemoil notified STX Corporation and Vishnu that payment

5   for the fuel was overdue.  [Dkt. #1, Ex. G].  The notice said that if Chemoil did not receive

6   payment immediately, it would seek to arrest the Darya Vishnu at its next arrival at Longview,

7   Washington.  Counsel for Vishnu responded to the email, pointing to the "no-lien" letter supplied

8   to Chemoil Latin America, saying that STX Corporation was responsible for payment and that

9   any arrest of the Darya Vishnu would be wrongful.  [*Id.*].  Chemoil did not receive payment for

10  the fuel.

11        On June 20, 2013, Chemoil sought an arrest warrant from the Court, which the Court

12  issued the same day.  [Dkt. #10].  The next day, after receiving word from the U.S. Marshal's

13  Office that it would be unable to serve the warrant for arrest due to being understaffed, Chemoil

14  filed a motion to deputize James W. Scheel, a Portland, Oregon, legal process server, as a U.S.

15  Marshal for the sole purpose of serving the arrest warrant on the Darya Vishnu.  After speaking

16  with the U.S. Marshal's Office, the Court granted the motion.  [Dkt. #17].  Before the arrest

17  warrant could be served, Vishnu's protection and indemnity insurer provided Chemoil with a

18  Letter of Undertaking, through which the vessel owners agreed to post security by way of a

19  surety bond in the amount of $614,412.31.[1]  The bond was filed with the Court, and the vessel

20  was never arrested.  [Dkt. #21].

21

22

23  _____

24        [1] This figure includes the cost of the fuel plus interest and other costs.

ORDER GRANTING MOTION TO DISMISS
COUNTERCLAIM - 3

1    In its Answer [Dkt. #24], Vishnu asserted a counterclaim for wrongful arrest.  It argues

2  that Chemoil wrongfully secured an order from the Court for the arrest of the vessel with full

3  knowledge that it did not have a maritime lien on the vessel.  The basis for this claim is the letter

4  it alleges it supplied to the bunker supplier in Panama.  It also argues that Chemoil wrongfully

5  secured a Court order for the arrest of the vessel when it had knowledge that a non-U.S. Marshal

6  would be serving the arrest warrant, because only a U.S. Marshal is authorized to arrest a vessel

7  under Fed. R. Civ. P., Supp. Admiralty R. C(3)(b)(i).

8    Chemoil seeks dismissal of the counterclaim, arguing that none of its actions were taken

9  in bad faith, with malice, or with gross negligence (a requirement for a wrongful arrest claim),

10  and that it had no knowledge of the letter until counsel for Vishnu provided it in June 2013.

11                          **III.    DISCUSSION**

12    **A. Motion to Dismiss Standard**

13    Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

14  theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v.*

15  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must allege facts to state

16  a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

17  1937, 1949 (2009).  A claim has "facial plausibility" when the party seeking relief "pleads

18  factual content that allows the court to draw the reasonable inference that the defendant is liable

19  for the misconduct alleged." *Id.*  Although the Court must accept as true the Complaint's well-

20  pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise

21  proper Rule 12(b)(6) motion. *Vasquez v. L.A. County,* 487 F.3d 1246, 1249 (9th Cir. 2007);

22  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation

23  to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

24

ORDER GRANTING MOTION TO DISMISS
COUNTERCLAIM - 4

1 | and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations

2 | must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

3 | 550 U.S. 544, 555 (2007) (citations and footnote omitted).  This requires a plaintiff to plead

4 | "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at

5 | 1949 (citing *Twombly*).

6 | **B.  Wrongful Arrest**

7 | "The arrest of a vessel in admiralty is an inconvenience to which the owners must submit

8 | as one caused by the exercise of a legal right on the part of the plaintiff." *Stevens v. F/V Bonnie*

9 | *Doon*, 655 F.2d 206, 209 (9th Cir. 1981) (citations omitted).  To recover damages for a wrongful

10 | arrest, the attachment must be by bad faith, malice, or gross negligence. *Id.*; *Frontera Fruit Co.*

11 | *v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937) ("The gravamen of the right to recover damages for

12 | wrongful seizure or detention of vessels is the bad faith, malice, or gross negligence of the

13 | offending party.").  The law of wrongful arrest has been analogized to that of malicious

14 | prosecution:

15 | > Where citizens reasonably disagree concerning their rights,
16 | > powers, and privileges, the doors should be kept open for an
> orderly determination of their differences. [T]he advice of
> competent counsel, honestly sought and acted upon in good faith is
17 | > alone a complete defense to an action for malicious prosecution.
> The same principle controls [in cases alleging wrongful arrest of a
18 | > vessel.]

19 | *Frontera Fruit Co.*, 91 F.2d at 297.  Absent a finding that Chemoil had the Darya Vishnu

20 | arrested in bad faith, with malice, or with gross negligence, the claim for wrongful arrest cannot

21 | stand.

22 | Vishnu has failed to allege facts showing that Chemoil acted in bad faith, with malice, or

23 | with gross negligence either in obtaining an arrest warrant for the Darya Vishnu or in obtaining

24 |

ORDER GRANTING MOTION TO DISMISS
COUNTERCLAIM - 5

1  an Order from this Court deputizing a private legal process server to serve the arrest warrant.

2  STX Corporation ordered fuel from Chemoil Corporation, which Chemoil Latin America

3  supplied to the Darya Vishnu in Panama.  Two months later, Chemoil had not been paid.  As a

4  means to procure payment, Chemoil approached this Court to obtain a warrant to arrest the very

5  vessel it had supplied with the fuel in Panama.  The parties do not dispute that the Darya Vishnu

6  received nearly $600,000 of fuel from Chemoil or that the fuel has not been paid for.  The only

7  dispute is whether Chemoil in fact had a maritime lien on the Darya Vishnu (and thus the right to

8  obtain an arrest warrant).  Chemoil's honest belief that it had a maritime lien over the vessel that

9  it supplied the fuel to does not amount to bad faith, malice, or gross negligence, even if that

10  belief turns out to be incorrect.

11       Vishnu's arguments are not persuasive.  It argues that Chemoil was not a party to the

12  underlying transaction of the sale and purchase of fuel, yet the Order Confirmation and Invoice

13  both list Chemoil Corporation as the seller.  [Dkt. #1, Exs. B, F].  It argues that Chemoil *knew* it

14  did not have a maritime lien on the vessel because the master of the Darya Vishnu gave Chemoil

15  Latin America a letter saying as much just before the fuel was bunkered on the vessel.  The

16  parties disagree as to whether giving the letter to Chemoil Latin America—a separate legal

17  entity—could put Chemoil Corporation on notice.  But even if it could, Chemoil Corporation

18  asserts that this letter does not constitute notice under the Chemoil Terms and Conditions, which

19  it contends governs this fuel purchase.  Under the Chemoil Terms, Chemoil requires that the fuel

20  be paid for in advance if there is a no-lien clause placed on the vessel from a charterer.  [Dkt. #1,

21  Ex. C].  Notice of a no-lien clause is required by the buyer within 24 hours of receiving the order

22  confirmation.  [Dkt. #1, Ex. B].  This is a practical requirement, as Chemoil does not want

23  unpaid fuel sailing away from port without any means to recover its cost.  Perhaps Chemoil erred

24

ORDER GRANTING MOTION TO DISMISS
COUNTERCLAIM - 6

1  this time, and its Terms and Conditions do not apply to this contract.  Perhaps STX Corporation

2  and the Darya Vishnu left Panama with unpaid and unsecured fuel.  But this is precisely the

3  dispute, and it is not bad faith for Chemoil to seek to procure payment through a maritime lien it

4  honestly believes it possesses.

5  　　　　　Chemoil also did not act in bad faith, with malice, or with gross negligence when it

6  obtained an Order from this Court deputizing a private legal process server to arrest the vessel.

7  For one, the vessel was never arrested, as Vishnu agreed to post a bond with the Court as a

8  means to keep the vessel on schedule.  But more specifically, that the Court issued the Order

9  cannot be construed as bad faith on the part of the party who brought the motion.  The U.S.

10  Marshals Office informed Chemoil and the Court that it would be unable to serve the warrant

11  due to a staff shortage.  Rather than deprive Chemoil of its alleged right to have the vessel

12  arrested, the Court fashioned a practical solution to the problem caused by the U.S. Marshals'

13  unavailability.  Similar solutions have been fashioned in other times of U.S. Marshals'

14  unavailability.  *Willamette Production Credit Ass'n v. Staffenson*, No. 84-736-RE, 1984 WL

15  1793 (D. Or. October 4, 1984); Dkt. #36, Reply at 12, Order, *Trans-Tec Services, Inc. v. M/V*

16  *CELESTINA*, 1:01-cv-02819, ECF No. 8 (granting substitute process ten days after the

17  September 11, 2001 terrorist attacks).  Because Vishnu has failed to plead facts showing that

18  Chemoil acted in bad faith, with malice, or with gross negligence, Chemoil's Motion to Dismiss

19  is GRANTED.

20

21

22

23

24

ORDER GRANTING MOTION TO DISMISS
COUNTERCLAIM - 7

1

**IV.    CONCLUSION**

2      Chemoil's Motion to Dismiss the counterclaim [Dkt. #28] is **GRANTED**.  Vishnu's

3  counterclaim is **DISMISSED WITH PREJUDICE**.

4      Dated this 5th day of December, 2013.

5

6      _____

7      RONALD B. LEIGHTON
       UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION TO DISMISS
COUNTERCLAIM - 8